(October 11, 2001)

■ George Firth, Appellant, v State of New York, Respondent. [731 NYS2d 244] —Carpinello, J. Appeal from an order of the Court of Claims (Collins, J.), entered March 17, 2000, which granted the State's motion for summary judgment dismissing the claim.

Claimant, employed by the Department of Environmental Conservation as Director of the Division of Law Enforcement, was responsible for weapons acquisitions for a three-year period in the early 1990s. On December 16, 1996, he was criticized in an Office of the Inspector General report, entitled "The Best Bang for Their Buck," for his alleged improper management of weapons and the alleged improper sale and/or disposition of surplus handguns. The report was posted on the State's Internet website. Although he timely filed a notice of intention to file a claim against the State alleging defamation, he never filed suit until March 18, 1998. The Court of Claims ultimately dismissed his claim as time barred, prompting this appeal.

The Statute of Limitations for defamation is one year (*see,* CPLR 215 [3]). In support of its motion for dismissal on Statute of Limitations grounds, the State established that the publication of the allegedly defamatory statements occurred on

December 16, 1996 and that the instant claim was not filed until March 18, 1998, thus rendering it untimely. In our view, these initial submissions were sufficient to meet the State's prima facie burden as the proponent for summary judgment. In opposition, claimant filed a 29-page affidavit in which he defended the propriety of his conduct and his professional reputation from the allegedly unfounded attacks contained in the Inspector General report. Notably, however, *nowhere* in that affidavit does he address the issue of whether his claim is, in fact, time barred. It is well settled that the consequence of failing to respond to a fact set forth in motion papers is a deemed admission (*see, Kuehne & Nagel v Baiden*, 36 NY2d 539, 544). Thus, at that juncture, he failed to set forth admissible evidence to oppose the motion.

Prior to rendering a decision on the motion, however, the Court of Claims *sua sponte* directed the State to submit an affidavit from one with personal knowledge setting forth the date the report was placed on the Internet and the dates, if any, of any modifications to the text of the report. At this time, the court also gave claimant the opportunity to file "any affidavits or legal arguments" that he deemed appropriate in response to the State's submission. Thereafter, the State provided an affidavit from Thomas Ruller, an Education Department associate programmer analyst, who averred that he placed the report on the Internet on December 16, 1996 and that no subsequent modifications to the text of the report were made.[1] In our view, this affidavit sufficiently addressed the court's specific concern and, along with the State's prior submissions, again satisfied its prima facie burden.

Although a door once closed may now have been reopened, it was still incumbent upon claimant to set forth evidence in admissible form sufficient to oppose the motion, or to establish by *affidavit* "that facts essential to justify opposition may exist but cannot then be stated" (CPLR 3212 [f]). The only response to the State's additional submission was a letter from claimant's counsel in which he acknowledged that neither he nor his client had "any knowledge" of the posting of the report on the Internet and that "[w]e must presume that what has been said [in the Ruller affidavit] is accurate." Notwithstanding this acknowledgment, counsel speculates that the State's affiant could provide the history of any modifications to the State's website (as opposed to the text of the report itself). Without

---

1. The dissent characterizes this affidavit as one which was "informally submitted," a characterization with which we disagree as it was submitted in response to a specific request from the trial court.

specifically requesting discovery, and without justifying his failure to have conducted discovery on this issue in the past,[2] counsel states in this letter that "it is important that additional information be provided in order to present a complete picture of the State's internet activities." We find this response to be palpably inadequate to oppose summary judgment. Even if we were to consider this comment to be a "request" for additional discovery, it was properly denied by the Court of Claims.

"A motion for summary judgment may be opposed with the claim that facts essential to justify opposition may exist but that such material facts are within the exclusive knowledge and possession of the moving party (*see*, CPLR 3212 [f]). However, the opposing party must make an *evidentiary* showing supporting this conclusion, mere speculation or conjecture being insufficient" (*Pank v Village of Canajoharie*, 275 AD2d 508, 509, citing *Scofield v Trustees of Union Coll.*, 267 AD2d 651, 652 [emphasis supplied]). Claimant had a year and a half to conduct discovery in this case, a time period which he chose to consume by litigating such unimportant issues as whether the State's answer was properly verified[3] and whether his own date of birth, Social Security number and address were proper subjects for a bill of particulars. When the Court of Claims *sua sponte* gave claimant a second opportunity to oppose summary judgment, he failed to submit any affidavits or to make any showing that the State's conduct during discovery prevented him from proffering sufficient facts to adequately oppose the motion. Since claimant had "ample opportunity to obtain the information [he] consider[ed] necessary to oppose a summary judgment motion[,] [t]here is no reason to delay judgment to enable [him] to engage in further discovery merely because [he] speculate[s] that [he] might discover something that will prove [his] case" (*Allen v Vuley*, 223 AD2d 868, 869, citing *Plotkin v Franklin*, 179 AD2d 746). To the extent that the dissent points to "record evidence" of a modification of the State's *website* as being sufficient to defeat summary judgment, we note that this "record evidence" was not before the Court of Claims on the motion for summary judgment, but rather was apparently submitted on a prior discovery dispute. More importantly, this "record evidence" makes reference only to a December 9, 1997 modification of a site "not ordinarily disclosed to the public."

---

2. Notably, claimant had already been the subject of a conditional order of preclusion and the Court of Claims had twice granted him an extension to conduct discovery.

3. Indeed, claimant sought a default judgment on this ground not once, but twice.

As to claimant's contention that the Statute of Limitations in this matter "started running anew each time that the report was accessed" by an Internet user, we are unpersuaded. We find, as did the Court of Claims, that the single publication rule applies to this case (*see, Gregoire v Putnam's Sons*, 298 NY 119, 123; *Gelbard v Bodary*, 270 AD2d 866, 866-867, *lv denied* 95 NY2d 756). As the report was placed on the Internet on December 16, 1996 and never modified thereafter, the claim filed on March 18, 1998 was clearly untimely, and the Court of Claims properly dismissed the complaint.

Crew III, J. P., and Rose J., concur.

Peters, J. (dissenting). While we agree with the majority's outright rejection of the continuing violation doctrine as a means to revive the Statute of Limitations each time that the original report was accessed by a user, we find this record raises an issue of fact as to whether a modification to the State's website from which this report could be accessed would constitute a republication which could prevent the dismissal of this action on timeliness grounds.

The affidavit of Thomas Ruller, an associate programmer analyst with the Education Department, revealed that he placed the subject report on the Internet on December 16, 1996, and provided an executive summary of such report making links thereto in both ASCII and Microsoft Word for Windows. In response thereto, claimant's counsel asserted that due to the limiting nature of the question posed by the Court of Claims, further information should be acquired from Ruller concerning the "history of modifications to the State's [I]nternet site since the report first appeared." Claimant's counsel further contended, pointing to record evidence, that it was the manipulation of the State's Internet site since December 16, 1996 that was relevant at this juncture.*

While the majority seeks to dismiss this action, in its entirety, due to claimant's failure "to set forth evidence in admissible form sufficient to oppose the motion, or to establish by *affidavit* 'that facts essential to justify opposition may exist but cannot then be stated' (CPLR 3212 [f])," we believe that, with the Court of Claims itself discerning a viable issue after full submission as to when this action should be deemed to have been commenced, claimant's response to Ruller's affidavit most certainly raised a question of fact. Despite claimant's lack of a formal response to the informally submitted affidavit of Ruller,

---

* Claimant's record evidence consisted of a portion of the deposition testimony of Randy Fine of the Office of the State Inspector General which referenced documents previously submitted to the Court of Claims.

claimant used the record to confirm that there was a publication of the subject report on the Internet both on December 16, 1996 and December 9, 1997, along with modifications to the State's website from which this report could be accessed.

The majority prematurely seizes upon the single publication rule to conclude this matter. Such rule has been found not to apply to the marketing of a paperback edition of a hardcover's text where changes were made in terms of, *inter alia*, the cover, the publisher's name, and both the title and copyright pages wherein the date of publication and its identifying numbers, including the one assigned by the Library of Congress, were altered (*see, Rinaldi v Viking Penguin*, 52 NY2d 422, 432-435). Hence, without further information resolving the issue raised by the Court of Claims, *sua sponte*, after full submission, we believe that it remains unresolved whether modifications to the State's website linking to this report could support a finding, after trial, that there was " 'a deliberate decision to republish or [that there was] active participation in implementing the republication, [which] resurrects the liability otherwise laid to rest by the [S]tatute of [L]imitations' " (*Bankers Trust Co. v Weinick, Sanders & Co.*, 1993 WL 478124, *6, 1993 US Dist LEXIS 16076, *17 [US Dist Ct, SD NY, Nov. 12, 1993, Dolinger, J.], quoting *Davis v Costa-Gavras*, 580 F Supp 1082, 1094; *see, Ferber v Citicorp Mtge.*, US Dist Ct, SD NY, Feb. 6, 1996, Schwartz, J.).

In light of the informal manner in which the Court of Claims, after full submission, initiated its inquiry, we cannot condone an award of summary judgment at this juncture simply because claimant failed to set forth these very same facts in a more formal manner. For these reasons, the order should be reversed.

Lahtinen, J., concurs. Ordered that the order is affirmed, without costs.